NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARLA J. POWELL,<br><br>                    Plaintiff,<br><br>     v.<br><br>THE PLAN ADMINISTRATOR OF THE LIBERTY INSURANCE HOLDINGS, INC. EMPLOYEE RETIREMENT SAVINGS PLAN and LIBERTY INSURANCE HOLDINGS, INC.,<br><br>                    Defendants. | Civil Action No. 21-13562 (GC) (TJB)<br><br>**OPINION** |

**CASTNER, U.S.D.J.**

**THIS MATTER** comes before the Court upon Defendants' Motion for Summary Judgment as well as Plaintiff's Cross-Motion for Summary Judgment. (ECF Nos. 16 & 19.) The motions are brought pursuant to Federal Rule of Civil Procedure ("Rule") 56(a). Following careful review of the parties' submissions, the Court decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth herein, and other good cause shown, Defendants' motion is **GRANTED**, and Plaintiff's cross-motion is **DENIED**.

**I.      BACKGROUND**

This case centers on allegations that Plaintiff may have a vested benefit under her employer-sponsored pension plan. Defendants contend that Plaintiff liquidated her interest in the plan more than two decades ago, and Plaintiff does not recall if she did or did not.

A. **PROCEDURAL BACKGROUND**

On July 12, 2021, Plaintiff Carla J. Powell, a resident of Ewing, New Jersey, sued the Plan Administrator of the Liberty Insurance Holding, Inc. Employee Retirement Savings Plan as well as Liberty Insurance Holdings, Inc. (together, "Liberty Insurance").[1]  (ECF No. 1.)  Ms. Powell asserts two claims under the Employee Retirement Income Security Act of 1974 ("ERISA"): Count One pursuant to 29 U.S.C. § 1132(c)(1) for "failure to turn over documents and instruments" and Count Two pursuant to 29 U.S.C. § 1104 for "losing plan records in violation of 29 U.S.C. § 1059."  (*Id.* ¶¶ 42-53.)  Plaintiff seeks an order compelling Liberty Insurance to comply with her request for documents and declaring that Liberty Insurance failed to maintain plan records sufficient to determine benefits.  (*Id.* ¶ 1.)

On December 9, 2021, Magistrate Judge Tonianne J. Bongiovanni held an initial pretrial conference with the parties, after which Judge Bongiovanni directed Defendants to submit their proposed summary judgment motion papers directly to Plaintiff.  (ECF No. 22-1 at 1-2 ¶ 2.)  On December 30, 2021, counsel for Defendants emailed copies of their proposed summary judgment papers, including supporting declarations, to Plaintiff's counsel.  (*Id.* at 2 ¶ 3.)  On January 14, 2022, Plaintiff's counsel wrote to advise Judge Bongiovanni that Ms. Powell believed discovery was warranted before summary judgment was entertained.  (*Id.* ¶ 4.)  As a result, on February 28, 2022, Judge Bongiovanni held a telephonic conference to discuss next steps.  (*Id.* ¶ 5.)  During this conference, "Plaintiff's counsel withdrew . . . Plaintiff's request for discovery and asked to proceed to motion briefing.  He stated that Plaintiff did not need discovery and indicated that Plaintiff intended to bring a cross-motion."  (*Id.* ¶¶ 5-6.)  As a result, discovery was stayed and the parties

---

[1]  The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

were directed to submit dispositive motions by no later than March 11, 2022.[2]  (*Id.* ¶ 7.)

On March 11, 2022, Liberty Insurance moved for summary judgment.  (ECF No. 16.)  It argues that Ms. Powell does not have standing to bring her claims, and even if she has standing, the claims "lack substantive merit."  (ECF No. 16-4 at 9-13.[3])  On March 21, 2022, Plaintiff cross-moved for summary judgment.  (ECF No. 19.)  She asks the Court to enter partial summary judgment in her favor and to compel Liberty Insurance to provide the requested documents and to award her the statutory civil penalty of $110 per day.  (ECF No. 19-1 at 15-18.)  Liberty Insurance opposed the cross-motion on April 11, 2022.  (ECF No. 22.)

B.  **FACTUAL BACKGROUND**[4]

1.  *UNDISPUTED FACTS*

Ms. Powell was employed by Guardian Royal Exchange Holdings, Inc. ("Guardian Royal"), until 1999, when Guardian Royal was acquired by Liberty Mutual Company ("Liberty Mutual").  (DSMF & PRSMF ¶ 1.[5])  Ms. Powell then became an employee of Liberty Mutual.  (*Id.*)  Her employment at Liberty Mutual ended in late September 2000.  (DSMF & PRSMF ¶ 4.)

---

[2]   The procedural history before the Magistrate Judge is detailed in a declaration from Defendants' counsel and certain entries on the docket, and Plaintiff has not submitted anything disputing the sworn representations.  (ECF No. 22-1 at 1-10.)

[3]   Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

[4]   On a motion for summary judgment, the Court "draw[s] all reasonable inferences from the underlying facts in the light most favorable to the nonmoving party." *Jaffal v. Dir. Newark New Jersey Field Off. Immigr. & Customs Enf't*, 23 F.4th 275, 281 (3d Cir. 2022) (quoting *Bryan v. United States*, 913 F.3d 356, 361 n.10 (3d Cir. 2019)).

[5]   Defendants' Statement of Material Facts ("DSMF") is at ECF No. 16-3; Plaintiff's Response to Defendants' Statement of Material Facts ("PRSMF") is at ECF No. 19-2 at 1-4; Plaintiff's Statement of Material Facts ("PSMF") is at ECF No. 19-2 at 5-7; and Defendants' Response to Plaintiff's Statement of Material Facts ("DRSMF") is at ECF No. 24.

While employed at Guardian Royal, Ms. Powell participated in the GRE Insurance Group Employee Retirement Plan (the "GRE Plan"). (DSMF & PRSMF ¶ 2.) After Guardian Royal was acquired by Liberty Mutual, the GRE Plan was merged into the Liberty Insurance Holdings, Inc. Employee Retirement Savings Plan (the "Liberty Insurance Plan"), and Ms. Powell became a participant in the Liberty Insurance Plan. (*Id.*)

Ms. Powell accrued a benefit in the Liberty Insurance Plan, and an account statement provided by Ms. Powell shows that she had a vested balance of $2,109.49 as of September 30, 2000. (PSMF & DRSMF ¶ 7; ECF No. 19-3 at 20.) Ms. Powell had taken a participant loan out of the Liberty Insurance Plan, which was reflected on the account statement. (DSMF & PRSMF ¶ 5.) Over the decades, administration of the Liberty Insurance Plan has "underwent numerous changes," including to those serving as fiduciaries, actuaries, accountants, administrators, service providers, and recordkeepers. (PSMF & DRSMF ¶ 8.)

In 2004, Ms. Powell prepared and filed a petition for bankruptcy. (DSMF & PRSMF ¶ 11; ECF No. 16-1 at 13.) Ms. Powell's petition did not identify any "[i]nterests in IRA, ERISA, Keogh, or other pension or profit sharing plans." (*Id.*)

On May 19, 2021, counsel for Ms. Powell wrote to the Administrator of the Liberty Insurance Plan asking that Ms. Powell be provided, pursuant to Section 104(b)(4) of ERISA, with documents and instruments under which the plan was established and operated. (DSMF & PRSMF ¶ 12; PSMF & DRSMF ¶ 9.) The request for documents was refused. Defendants have taken the position that Ms. Powell is no longer a "participant" in the plan because her account was liquidated in November 2000. (DSMF & PRSMF ¶ 13; PSMF & DRSMF ¶¶ 12, 18.) Ms. Powell contends that she "needs the requested documents . . . to ascertain . . . whether . . . [that] is or is not true." (*Id.*)

### 2. FACTS SUPPORTED BY RECORD EVIDENCE

Defendants submit a declaration from Brent Lanoue, corporate counsel for the "Liberty Mutual Group, Inc.," to establish certain facts. (ECF No. 16-1 at 1.) According to Mr. Lanoue, the Liberty Insurance Plan at some point "merged into the Liberty Mutual 401(k) Plan," and the administrator of this new plan is the "Liberty Mutual Retirement Committee." (*Id.* at 1-2 ¶ 3.) Information obtained "from the recordkeeper for the [Liberty Insurance Plan], Charles Schwab, . . . [indicates that] Ms. Powell's account had been liquidated in the fourth quarter of 2000, shortly after she terminated employment" with Liberty Mutual. (*Id.* at 2 ¶ 6.) Appended to Mr. Lanoue's declaration is a one-page printout that Defendants refer to as a "Form 1099-R"[6] that is cited as evidence that Ms. Powell's account was liquidated in 2000. (*Id.* at 6.)

Defendants also submit a declaration from Deborah Chaffee, a Managing Director of Charles Schwab Trust Bank. (ECF No. 16-2 at 1.) According to Ms. Chaffee, Charles Schwab served as the directed trustee of the Liberty Insurance Plan. (*Id.* at 1-2 ¶ 3.) "Research conducted by members of the [Charles Schwab] Operation Control team determined that a plan distribution request for [Ms.] Powell was processed by Schwab . . . on or about November 8, 2000. Charles Schwab . . . found that two payments had been issued to [Ms.] Powell. The first payment was a Plan loan in the amount of $1,000 and was issued on August 29, 2000. The second payment was a final lumpsum distribution in the amount of $1,252.96 issued on November 9, 2000." (*Id.* at 2 ¶ 5.) Neither Bank of America nor Charles Schwab found any record that the checks were uncashed, and as a result, Charles Schwab "conclude[d] that both of the[] checks were, in fact, cashed." (*Id.*

---

[6] A Form 1099-R is the Internal Revenue Service form for "Distributions from Pensions, Annuities, Retirement or Profit–Sharing Plans, etc." *Brown v. U.S. Steel Corp.*, Civ. No. 10-780, 2010 WL 4388075, at *6 (W.D. Pa. Oct. 29, 2010).

at 3 ¶ 6-9.[7]) Finally, Ms. Chafee represents that a "Form 1099-R" reports that Ms. Powell was paid $2,816.20, and the difference between that amount and the two checks allegedly issued to Ms. Powell "represents taxes withheld from the second payment and turned over to the IRS, as shown on the Form 1099-R." (*Id.* at 3 ¶ 10.)

In opposition, Ms. Powell submits her own declaration wherein she represents that she does "not recall having the funds in [her] account distributed . . . . Therefore, [she] believe[s] that . . . [she is] still a participant in the [Liberty Insurance] Plan." (ECF No. 19-4 at 2 ¶ 7.) She submits nothing that factually undermines the sworn representations in the declarations of Mr. Lanoue or Ms. Chaffee. She also does not explain why, if she believed she had a vested retirement account as part of the Liberty Insurance Plan, she did not so represent on her 2004 petition for bankruptcy.

## II.  LEGAL STANDARD

### A.  RULE 56—SUMMARY JUDGMENT

"Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure." *In re Lemington Home for Aged*, 659 F.3d 282, 290 (3d Cir. 2011). Pursuant to Rule 56, "[s]ummary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party and drawing all inferences in favor of that party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016) (citing Fed. R. Civ. P. 56(a)). "A fact is material if—taken as true—it would affect the outcome of the case under governing law." *M.S. by & through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 125 (3d Cir. 2020) (citing *Anderson v. Liberty Lobby,*

---

[7] The declaration jumps from paragraph 6 to paragraph 9 without any paragraphs in between.

6

*Inc.*, 477 U.S. 242, 248 (1986)). "And a factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.*

The standard is the same in the context of dueling motions for summary judgment. *See Auto-Owners Ins.*, 835 F.3d at 402. "When both parties move for summary judgment, '[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.'" *Id.* (quoting 10A Charles Alan Wright et al., *Federal Practice & Procedure* § 2720 (3d ed. 2016)).

### III. DISCUSSION

Defendants' primary argument is that because Ms. Powell is neither a "participant" nor "beneficiary" of the Liberty Insurance Plan, she lacks statutory standing and "her claims must fail." (ECF No. 16-4 at 9.) Defendants point to the declarations from Mr. Lanoue and Ms. Chaffee for their contention that Ms. Powell "has not been a covered employee for twenty-one years and possesses no reasonable expectation of returning to covered employment in the future." (*Id.* at 10.) They also point to Ms. Powell's statement on her 2004 petition for bankruptcy, filed four years after Ms. Powell is said to have liquidated her account in the Liberty Insurance Plan, wherein Ms. Powell did not identify any retirement accounts. (ECF No. 22 at 8.) According to Defendants, "[b]y liquidating her account [in November 2000] and taking her vested benefits, [Ms.] Powell placed herself outside the final category of 'participants.'" (ECF No. 16-4 at 10-11.)

In opposition, Ms. Powell argues that she is a "participant" in the Liberty Insurance Plan, and she points solely to the September 30, 2000 "Account Statement that showed she had a vested interest" at that time. (ECF No. 19-1 at 10.) Ms. Powell writes that her "possession of a statement of her plan account provides a colorable basis for a claim to vested benefits." (*Id.* at 11-12.) She

7

also argues that granting summary judgment before "adequate discovery" would be premature. (*Id.* at 13.)

In reply, Defendants take issue with Plaintiff's about-face on the issue of discovery, emphasizing that it was "Plaintiff's counsel [who] withdrew . . . [the] request for discovery" after seeing Defendants' summary judgment papers] and asked to proceed to motion briefing.  (ECF No. 22-1 at 2 ¶ 6.)  Defendants argue that it would be prejudicial now to delay a decision after Plaintiff's counsel indicated that a motion for summary judgment was appropriate.  (ECF No. 22 at 11.)

The first count of Ms. Powell's complaint is asserted pursuant to Section 502(c)(1) of ERISA, which in relevant part provides:

> Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a *participant or beneficiary* (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting *participant or beneficiary* within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100[8] a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.
>
> [29 U.S.C. § 1132(c)(1) (emphases added).]

The second count is asserted pursuant to Section 404 of ERISA for losing plan records in violation of 29 U.S.C. § 1059, which in relevant part provides:

> The plan administrator shall make a report, in such manner and at such time as may be provided in regulations prescribed by the Secretary, to each employee who is a *participant* under the plan and who—
>
> > (A) requests such report, in such manner and at such time as may be provided in such regulations . . . .

---

[8]   The penalty for an administrator's failure to respond to a request for information was increased to $110 per day for violations after July 29, 1997.  *See* 29 C.F.R. § 2575.502c-1.

[29 U.S.C. § 1059(a)(1) (emphasis added).]

Ms. Powell has not alleged that she is a "beneficiary" in the Liberty Insurance Plan; thus, the dispute centers on whether she is a "participant" entitled to certain documents from the administrator of the Liberty Insurance Plan, and if those documents were not timely furnished, the resulting statutory penalties. *See Peterson v. Windham Cmty. Mem'l Hosp., Inc.*, 803 F. Supp. 2d 96, 108 (D. Conn. 2011) ("An individual is only entitled to damages under [29 U.S.C. § 1132(c)(1)] if that individual can establish that he or she fits within the definition of 'participant.'"); *Kreinik v. Showbran Photo, Inc.*, 400 F. Supp. 2d 554, 559 (S.D.N.Y. 2005) ("Sections 1024(b)(4) and 1132(c)(1)(B) . . . provide rights and remedies only to *participants* and *beneficiaries*." (citation omitted)).

ERISA defines "participant" as "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002(7). In *Firestone Tire & Rubber Co. v. Bruch*, the United States Supreme Court considered "which persons are 'participants' entitled to obtain information about benefit plans covered by ERISA." 489 U.S. 101, 105 (1989). The Court found that the term "participant" should be "naturally read to mean either 'employees in, or reasonably expected to be in, currently covered employment,' or former employees who 'have . . . a reasonable expectation of returning to covered employment' or who have 'a colorable claim' to vested benefits." *Id.* at 117 (citation omitted). "[T]o establish that he or she 'may become eligible' for benefits, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future." *Id.* at 117-18.

Here, Ms. Powell does not argue that she is a current employee covered by the Liberty Insurance Plan. She also does not argue that she has a reasonable expectation of returning to covered employment. Indeed, due to the more than twenty years that have passed since Ms. Powell was employed by an entity related to the Liberty Insurance Plan, it would be unreasonable to expect that Ms. Powell may return to covered employment. *See, e.g.*, *Bulovic v. Both*, 14 F. Supp. 3d 365, 382 (S.D.N.Y. 2014) ("[F]ormer employee does not have a reasonable expectation of returning to covered employment where 'many years' have passed since she left such employment."). Ms. Powell's sole argument is that she is a "participant" because she has a "colorable claim" to vested benefits.

The United States Court of Appeals for the Third Circuit has explained that "[t]he burden of persuasion for establishing a colorable claim is less exacting than that needed to establish a likelihood of success on the merits." *Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 75 (3d Cir. 2011). The concept "necessarily encompasses situations in which the requester has a reasonable basis for believing that he or she has a meritorious claim but is in fact mistaken." *Daniels v. Thomas & Betts Corp.*, 263 F.3d 66, 79 (3d Cir. 2001). Not every claim asserted for vested benefits is a "colorable claim," however.

For example, in *Bloom v. Manager Employee Benefits Employee Retirement Plan Committee Chicago Pneumatic Tool Company*, the district court dismissed for lack of subject matter jurisdiction ERISA claims that sought copies of certain documents. Civ. No. 87-412, 1988 WL 47900, at *2 (D. Conn. Apr. 22, 1988). The court found that the plaintiff had terminated his employment before he qualified for benefits, and as a result, the plaintiff had not shown a "colorable claim to vested benefits" and was "not a 'participant' within the meaning of ERISA.'" *Id.* (citation omitted).

Similarly, in *Shulman v. Hosposable Products, Inc.*, Judge Clarkson S. Fisher, Sr., granted summary judgment on the ground that the plaintiff lacked standing under ERISA where the plaintiff no longer participated in the employee benefit plan and his participation "ceased when he terminated his employment." Civ. No. 89-4822, 1991 WL 160340, at *3 (D.N.J. Aug. 12, 1991). Judge Fisher wrote that "[b]ecause [the plaintiff] cannot establish that he has a colorable claim to vested benefits, he is not a participant within the meaning of the statute." *Id.*

Finally, in *Ericson v. Greenberg & Co., P.C.*, a panel of the Third Circuit Court of Appeals affirmed the dismissal of the ERISA claims for lack of subject matter jurisdiction where the plaintiff "filed suit nearly two years after the Company paid her the benefits to which she was entitled under the Plan." 118 F. App'x 608, 611 (3d Cir. 2004). Because the plaintiff was no longer owed anything by the plan, she "did not have a colorable claim to benefits from the Plan at the time she filed her complaint and, therefore, could not be characterized as a 'participant.'" *Id.*

In the present case, Ms. Powell relies on a single account statement, for the period July 1 to September 30, 2000, in support of her position that she has a colorable claim to vested benefits under the Liberty Insurance Plan. (ECF No. 19-3 at 20.) The statement shows that, as of September 2000, Ms. Powell's account had a vested balance of $2,109.49. (*Id.*) In response, Defendants have submitted two sworn declarations and a document referred to as a "Form 1099-R" as evidence that Ms. Powell liquidated her account and received a payout in November 2000 of her vested benefits. (ECF No. 16-1 at 1-6; ECF No. 16-2 at 1-3.) Ms. Powell does not dispute Defendants' representations; she merely asserts that she does not, more than twenty years later, "recall having the funds in [her] account distributed . . . . Therefore, [she] believe[s] that . . . [she is] still a participant in the [Liberty Insurance] Plan." (ECF No. 19-4 at 2 ¶ 7.)

Based on this record, there is no genuine dispute of material fact; the undisputed evidence is in Defendants' favor. Ms. Powell has furnished nothing to contest Defendants' sworn

11

representations that Ms. Powell liquidated her interest in the Liberty Insurance Plan in November 2000. In fact, Ms. Powell's 2004 bankruptcy petition confirms that she did not believe that she had an interest in a retirement account as of that time. Because what has been presented to the Court supports the conclusion that Ms. Powell received what she was due, she no longer satisfies ERISA's definition for a "participant" and lacks standing to assert her claims under the statute. *See, e.g.*, *Ericson*, 118 F. App'x at 611 (finding that because the plaintiff was no longer owed anything by the plan, she "did not have a colorable claim to benefits from the Plan at the time she filed her complaint and, therefore, could not be characterized as a 'participant.'"); *Shulman*, 1991 WL 160340, at *3 ("It follows that, since [the plaintiff] is no longer a plan participant, he is not entitled to benefits under the Policy and, therefore, is not a beneficiary. Consequently, because [the plaintiff] is not a participant nor a beneficiary, he lacks standing to bring an action under ERISA."); *see also Winchester v. Pension Comm. of Michael Reese Health Plan, Inc. Pension Plan*, 942 F.2d 1190, 1194 (7th Cir. 1991) ("She was not a plan participant at the time the action was filed and thus has no standing.").

In seeming acknowledgement of the weakness of her position, Ms. Powell contends that entering judgment at this stage would be "inappropriate without adequate discovery." (ECF No. 19-1 at 13.) Plaintiff, however, was afforded an adequate opportunity for discovery before summary judgment. After receiving Defendants' proposed summary judgment motion papers in December 2021, Plaintiff's counsel indicated first that Ms. Powell wanted discovery and then, in February 2022, represented that upon second thought discovery was unnecessary and that Ms. Powell desired to proceed directly to briefing and a decision on Defendants' summary judgment motion. (ECF No. 22-1 at 1-2 ¶¶ 2-6.) In accordance with those expressed wishes, the Court stayed discovery and set a briefing schedule. (*Id.* at 2 ¶ 7.) Now, more than two years after Plaintiff's case was filed, after summary judgment has been fully briefed, and after Ms. Powell has

presented no reason to doubt Defendants' representations nor to suggest that discovery would reveal anything to foreclose judgment, "no serious claim can be made that [Plaintiff] . . . [would be] in any sense 'railroaded' by . . . [the Court deciding] summary judgment." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986).

Although courts should not prematurely rule when there are disputes of fact that could be resolved through additional discovery, the issue here is that Plaintiff has not demonstrated that there are any disputed facts that require such discovery. Plaintiff makes vague assertions like "Ms. Powell . . . need[s] all the documents requested under the statutory request for ERISA documents to determine and enforce her statutory rights," (ECF No. 19-3 at 3 ¶ 10), but such broad and "general statements of what a party hopes to gain through a delay for discovery are insufficient." *Bulboff v. King Aircraft Title, Inc.*, Civ. No. 19-18236, 2021 WL 1186822, at *4 (D.N.J. Mar. 30, 2021) (citing *Hancock Indus. v. Schaeffer*, 811 F.2d 225, 230 (3d Cir. 1987)). Plaintiff has not pointed to anything specifically that would challenge Defendants' support for the assertion that the Plaintiff's benefits were paid out to her in November 2000. Plaintiff seems to be hoping that the Court will, notwithstanding her counsel's representation that discovery was not needed, sanction a fishing expedition. The Court declines to do so. *See Malouf v. Turner*, 814 F. Supp. 2d 454, 460 (D.N.J. 2011) ("Plaintiff's counsel's vague and general statement that the motion should be denied because 'discovery is not complete' is insufficient to meet the requirements of Rule 56(d). . . . The Court will, therefore, not deny or delay summary judgment on the basis of insufficient discovery."). Under these circumstances, and because Defendants have demonstrated that Plaintiff lacks standing under ERISA as a matter of law, the Court finds that summary judgment can be properly entered in Defendants' favor and Plaintiff's claims dismissed.

## IV.     CONCLUSION

For the reasons set forth above, and other good cause shown, Defendants' Motion for Summary Judgment (ECF No. 16) is **GRANTED**, and Plaintiff's Cross-Motion for Summary Judgment (ECF No. 19) is **DENIED**.  An appropriate Order follows.

Dated:  December 22, 2023

*Georgette Castner*
**GEORGETTE CASTNER**
**UNITED STATES DISTRICT JUDGE**